## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Iram Yeoconda Obando Fajardo (aka Geoconda Obando Fajardo) and Veronica Obando,<br>　　Plaintiffs<br>v.<br>Antonio DiBenedetto (aka Tony DiBenedetto), Anna DiBenedetto, Giovanni DiBenedetto, and Ferdinando DiBenedetto (aka Freddy DiBenedetto),<br>　　Defendants | No.<br><br>May 19, 2010 |

### COMPLAINT

### INTRODUCTION

1. Plaintiffs, Irma Yeocondo Obando and Veronica Obando, were subjected to numerous discriminatory practices, including sexual harassment and a hostile working environment, on the basis of gender, race, national origin, and alienage by their former employer Rocco's Bakery in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq, 42 U.S.C. § 1981, and state law, including Conn. Gen. Stat. §§ 46a-58(a); 46a-60(a)( 1); 46a-60(a)(4); 46a-60(a)(8); 46a-64c(a)(2).

2. Plaintiffs were not paid overtime compensation as required by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq and state law, including Conn. Gen. Stat. §§ 31-71; 31-76b.

3. Plaintiffs seek to recover unpaid wages and other damages inflicted by

Defendants, who are owners, principals, employees and agents of Rocco's Bakery.  Defendants exploited Plaintiffs by perpetrating and aiding and abetting a broad scheme of physical, sexual, and verbal abuse, and psychological coercion to keep Plaintiffs in their control and working for less than the wages mandated by federal and state law.

## JURISDICITON AND VENUE

4. The Court has jurisdiction over the Plaintiffs' federal claims pursuant to 18 U.S.C. § 1331 (Federal Question Statute); 29 U.S.C. § 216(b) (Fair Labor Standards Act). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

5. Plaintiffs properly exhausted their administrative remedies by filing a timely complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on November 20, 2008.  CHRO accepts complaints on behalf of the federal Equal Employment Opportunity Commission.  The CHRO granted a release of jurisdiction in the Plaintiffs' case on February 22, 2010.

6. Venue in these proceedings is proper in the District of Connecticut because a substantial part of the events giving rise to this action occurred within this district and all Defendants reside in this district.

## PARTIES

7. Plaintiff Irma Yeoconda Obando was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor

Standards Act, 29 U.S.C. § 201 et seq., by the Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2), and by the Conn. Gen. Stat. § 46a-51(9).

8.  Plaintiff Veronica Obando was at times relevant to this Complaint an employee of Defendants, as that term is defined by the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq., by the Connecticut Wage and Hour Law, Conn. Gen. Stat. §§ 31-58(f) and 31-71a(2), and by the Conn. Gen. Stat. § 46a-51(9).

9.  Defendant Antonio DiBenedetto (aka Tony DiBenedetto) is the owner, operator, member, and manager of Rocco's Baker (aka Rocco's Pastry Shop).  At all times relevant to this Complaint, Defendant Antonio DiBenedetto had operational control over the payment of wages and compensation by Rocco's Bakery to its employees, including Plaintiffs.

10. At all times relevant to this complaint, Rocco's Bakery was a retail and wholesale bakery with places of business at 432 Ferry Street, New Haven, CT 06513 and 121 Main Street, Meriden, CT 06451.

11. Defendant Anna DiBenedetto is a co-owner, operator, member, and manager of Rocco's Bakery.  At all times relevant to this Complaint, Defendant Anna DiBenedetto had operational control over the payment of wages and compensation by Rocco's Bakery to its employees, including Plaintiffs.  She is also the wife of Plaintiff Antonio DiBenedetto.

12. Dedendant Giovanni DiBenedetto is the son of Defendants Antonio DiBenedetto and Anna DiBenedetto.  At all times relevant to this Complaint, Defendant Giovanni DiBenedetto was hired to work at Rocco's Bakery in a supervisory

capacity which included supervision of Plaintiffs.

13. Defendant Ferdinando DiBenedetto is the son of Defendants Antonio
    DiBenedetto and Anna DiBenedetto.  At all times relevant to this Complaint,
    Defendant Giovanni DiBenedetto was hired to work at Rocco's Bakery in a
    supervisory capacity which included supervision of Plaintiffs.

14. At

15. All parties to this case reside in Connecticut.

### FACTS

16. Plaintiffs are female.

17. Plaintiffs are Hispanic.

18. Plaintiffs are natives and citizens of Ecuador

19. Plaintiffs are not US citizens.

20. Plaintiff Veronica Obando entered the United States on or about January 2000.

21. Plaintiff Veronica Obando began working for Rocco's Bakery approximately two
    weeks after coming to the US.

22. Plaintiff Veronica Obando consistently worked at Rocco's Bakery until her
    termination on or about May 29, 2008 except for breaks because of her
    pregnancy and newborn child from 2001 through approximately 2003.

23. Plaintiff Irma Yeoconda Obando entered the United States on or about November
    2000.

24. Plaintiff Irma Yeoconda Obando began working for Rocco's Bakery on or about
    March 2001.

25. Plaintiff Irma Yeoconda Obando worked for Rocco's Bakery consistently until her termination on or about May 29, 2008.

26. At the time Plaintiffs came to the United States, their mother Mercedes Fajardo was already employed at Rocco's Bakery.

27. Many of Plaintiffs' family members worked at Rocco's Bakery, including their mother, her husband Nestor Urena, and their aunt Maria Fajardo.

28. All of Plaintiffs' family members who worked at Rocco's Bakery were also born in Ecuador, of Hispanic race, and not US citizens.

29. Based upon their experience working at Rocco's Bakery, Plaintiffs believe that at least 15 employees were working for the company during the time that they were employees.

30. Rocco's Bakery employed several individuals who were not Ecuadoran, were not Hispanic, and were US citizens or lawful permanent residents.

31. Plaintiffs worked at Rocco's Bakery preparing baked goods such as bread, pastries, desserts, and cakes. Plaintiffs would also clean and would do work like taking out the trash.

32. Plaintiffs were paid an hourly wage by Rocco's Bakery.

33. Plaintiff Veronica Obando's initial wage at Rocco's Bakery was $7.50 per hour. . Plaintiffs Veronica Obando's wage was raised to $8.50 per hour in 2004 Plaintiffs's wage remained at $8.50 per hour until the termination of her employment.

34. Plaintiff Irma Yeoconda Obando's initial wage was $5.50 per hour.  Her wage was subsequently raised to $7.50 per hour.  It was raised to $8.50 per hour on or

about 2004 and $9.50 per hour on or about 2005.  Her wage remained at that rate until her termination.

35. Plaintiffs were paid in cash by Defendants.

36. Defendants maintained time cards as a record of the Plaintiffs' employment. The time cards were processed every week when the wages were paid. Defendant Antonio DiBenedetto told Plaintiffs and their family to destroy their time cards and to not show them to anyone. The employer told Plaintiffs and their family to do so because they are not US citizens and do not have employment authorization from US immigration authorities. The employer stated to Plaintiffs' family that they would be fired and thrown out of their apartments if they showed the time cards to anyone to told anyone that they were working at the bakery.

37. Plaintiffs and some of their family members working at Rocco's Bakery asked Defendant Tony DiBenedetto if he would give them an employment letter indicating that they worked at the bakery for use in things such as providing it to their children's school and to obtain medical insurance and care for them. Tony DiBenedetto said that he would not give them an employment letter because they were "illegal." Tony DiBenedetto stated that Plaintiffs and her family members did not have the right to what they were seeking because they are "illegal" and that he was "paying extra" because they are "illegal."

38. Plaintiffs' mother asked Defendant Tony DiBenedetto if she and her family members — including Plaintiffs — could be paid by check. Plaintiffs' mother indicated that she needed proof of wages in order to obtain medical care.

Defendant Tony DiBenedetto told Plaintiffs' mother that he would not pay her or her family members — including Plaintiffs — by check because they were "illegal."

39. Defendant Tony DiBenedetto told Plaintiffs that their children could not attend school, be baptized, or obtain medical insurance because she is not a US citizen and did not have lawful immigration status.

40. Plaintiffs and other Ecuadoran employees were provided housing by Tony DiBenedetto. Plaintiff Veronica Obando was charged $500 for the apartment, with the rent later reduced to $300.  Plaintiff Irma Yeoconda Obando was charged $800 for her monthly rent.

41. Plaintiffs regularly worked more than 40 hours per week at Rocco's Bakery, with some weeks up to 100 hours.

42. Plaintiffs were never paid overtime wages by Rocco's Bakery. Instead, Plaintiffs were always paid the base hourly wage for all of her work.

43. Plaintiffs and their family members asked Defendant Tony DiBenedetto about being paid overtime wages. Defendant Tony DiBenedetto informed Plaintiffs and her family members that they would not be paid overtime wages because she was "illegal" and this caused the business "to pay extra."

44. Plaintiffs and other Ecuadoran employees were generally employed in the back of the bakery shop where they would generally not have any interaction with customers. Employees of other ethnic backgrounds, other national origin, and other alienage were generally given employment in the front of the store where they would interact with customers.

45. On numerous occasions over various dates throughout the Plaintiffs employment at Rocco's Bakery, Defendant Tony DiBenedetto touched Plaintiffs and other Ecuadoran women in a sexual manner without their consent. This included touching the breasts and buttocks. The touchings were frequently accompanied by lewd comments. Examples of such comments would be calling them "fucking prostitutes."  The comments would frequently include ethnic slurs. These unwanted touchings occurred on a regular basis, often every day. They occurred both at the bakery and when Plaintiffs would be given a ride by Defendant Tony DiBenedetto.

46. On numerous occasions Plaintiffs expressed their dissatisfaction with the unwanted sexual touchings to Defendant Tony DiBenedetto. On numerous occasions Plaintiffs would begin crying and would leave their work shift because of the unwanted sexual touchings.

47. The unwanted sexual touchings occurred on a regular basis throughout the course of the Plaintiffs' employment at Rocco's Bakery up until their employment was terminated on or about May 29, 2008.

48. On numerous occasions over various dates during their employment at Rocco's Bakery, Defendants Tony DiBenedetto and Freddy DiBenedetto made inappropriate sexual comments to Plaintiffs. They also made inappropriate sexual comments about Plaintiffs to other employees. The inappropriate sexual comments occurred on a regular basis. Examples of such conduct would be calling Plaintiffs and other female Ecuadoran employees "fucking prostitutes" and saying that they have AIDS.  These comments would often include racial

slurs. These comments would be made directly to Plaintiffs and other female Ecuadoran employees. These comments would also be made about Plaintiffs and other Ecuadoran employees to non-Ecuadoran employees of the bakery.

49. On numerous occasions Plaintiffs expressed their dissatisfaction with the comments to Defendants Tony DiBenedetti and Freddy DiBenedetto. On numerous occasions Plaintiffs would begin crying and would leave end her shift because of the unwanted comments.

50. The inappropriate comments occurred on a regular basis throughout the Plaintifs' employment at Rocco's Bakery up until their employment was terminated on or about May 29, 2008.

51. On many occasions over various dates during their employment at Rocco's Bakery, Defendant Tony DiBenedetto exposed himself to Plaintiffs and gratified himself in a sexual manner. These incidents occurred at the Meriden branch of the bakery. Tony would state that he was "in the mood" and encouraged Plaintiffs and other Ecuadoran women present to engage in sexual acts with him. Plaintiffs expressed their dissatisfaction with these incidents.  During one of these incidents, Plaintiff Irma Yeoconda Obando expressed her dissatisfaction with Defendant Antonio DiBenedetto's actions by placing hot pepper on his genitals after they were exposed and he was gratifying himself.

52. During her employment at Rocco's Bakery, Antonio DiBenedetto solicited Plaintiff Veronica Obando to engage in a sexual relationship. Antonio promised Plaintiffs money, better treatment, a green card, and to bring her father to the US if she engaged in a sexual relationship.

9

53. During her employment at Rocco's Bakery, both Defendant Antonio DiBenedetto and Ferdinando DiBenedetto solicited Plaintiff Irma Yeoconda to engage in a sexual relationship.  Defendant Antonio DiBenedetto indicated to he would pay her $500 per month if she engaged in a sexual relationship with him.

54. The pattern and practices of activities described in the above paragraphs that the Plaintiffs were subjected to and observed others being subjected to were only perpetrated against the Hispanic Ecuadoran women at the bakery.

55. As a result of the racial and sexual comments and propositions made by Defendants Antonio DiBenedetto and Ferdinando DiBenedetto, as well as sexual assaults and indecent exposure, the Plaintiffs have suffered humiliation, anguish, and shame.

56. During their employment, Plaintiffs and other members of their family were told by Defendant Antonio DiBenedetto that he visited Ecuador.

57. During their employment, Plaintiffs and other members of their family were told by Defendant Antonio DiBenedetto that he was connected with individuals in government, including a judge, including pointing them out when they came into Rocco's Bakery.

58. Plaintiffs were terminated from their employment at Rocco's Bakery on or about May 29, 2008. Plaintiffs' employment was terminated after agents of the Department of Homeland Security, Immigration and Customs Enforcement ("ICE") conducted a raid of the bakery.  Defendant Tony DiBenedetto stated to the Plaintiffs that they and their family were cooperating with immigration and that he did not want to see them around anymore.

59. Plaintiffs filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on November 20, 2008 alleging that they were subjected to unlawful discriminatory practices, including sexual harassment.

60. On April 21, 2009, the CHRO issued a written decision retaining the Plaintiffs complaints following a Merit Assessment Review Process.

61. In November 2009, Plaintiffs requested a release of jurisdiction from the CHRO concerning their complaint.

62. On February 22, 2010, the CHRO granted the Plaintiffs a release of jurisdiction.

**STATEMENT OF CLAIMS**

**COUNT ONE**

**UNLAWFUL DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT.**

63. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

64. Plaintiffs were subject to discrimination by Rocco's Bakery in compensation, terms of employment, and conditions of employment on account of their sex in violation of Title VII of the Civil Rights Act - 42 U.S.C. § 2000e-2(a)(1) and (2).

65. Plaintiffs and other Ecuadoran women employed at Rocco's Bakery were subject to unwanted and inappropriate sexual touchings, sexual comments racial comments, and exposure to sexual acts by her employer on account of their gender, race, and national origin.

66. Plaintiffs and other female Ecuadoran employees were not paid required overtime wages on account of their race, national origin, and alienage.

67. Plaintiffs and other female Ecuadoran employees were segregated into

particular areas of the bakery away from customers and made to perform more strenuous work on account of their race, national origin, and alienage.

68. Plaintiffs and other female Ecuadoran employees were not paid by check or provided proper documentation regarding their employment on account of their race, national origin, and alienage.

69. The discrimination in compensation, terms of employment, and conditions of employment was committed by Rocco's Bakery from the initiation of their employment through the termination of their employment on or about May 29, 2008.

70. Plaintiffs were subject to both acts of intentional discrimination and acts that caused a disparate impact.

## COUNT TWO

### UNLAWFUL DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT.

71. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

72. Plaintiffs were subject to discrimination by Rocco's Bakery in compensation, terms of employment, and conditions of employment on account of their race in violation of Title VII of the Civil Rights Act  - 42 U.S.C. § 2000e-2(a)(1) and (2).

73. Plaintiffs and other Hispanic Ecuadoran women employed at Rocco's Bakery were subject to unwanted and inappropriate sexual touchings, sexual comments racial comments, and exposure to sexual acts by her employer on account of their gender, race, and national origin.

74. Plaintiffs and other Hispanic Ecuadoran employees were not paid required overtime wages on account of their race, national origin, and alienage.

75. Plaintiffs and other Hispanic Ecuadoran employees were segregated into particular areas of the bakery away from customers and made to perform more strenuous work on account of their race, national origin, and alienage.

76. Plaintiffs and other Hispanic Ecuadoran employees were not paid by check or provided proper documentation regarding their employment on account of their race, national origin, and alienage.

The discrimination in compensation, terms of employment, and conditions of employment was committed by Rocco's Bakery from the initiation of their employment through the termination of their employment on or about May 29, 2008.

77. Plaintiffs were subject to both acts of intentional discrimination and acts that caused a disparate impact.

## COUNT THREE

### UNLAWFUL DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT.

78. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

79. Plaintiffs were subject to discrimination by Rocco's Bakery in compensation, terms of employment, and conditions of employment on account of their gender, race, and national origin in violation of Title VII of the Civil Rights Act  - 42 U.S.C. § 2000e-2(a)(1) and (2).

80. Plaintiffs and other Ecuadoran women employed at Rocco's Bakery were subject to unwanted and inappropriate sexual touchings, sexual comments racial comments, and exposure to sexual acts by her employer on account of their

gender, race, and national origin.

81. Plaintiffs and other Ecuadoran employees were not paid required overtime wages on account of their race, national origin, and alienage.

82. Plaintiffs and other Ecuadoran employees were segregated into particular areas of the bakery away from customers and made to perform more strenuous work on account of their race, national origin, and alienage.

83. Plaintiffs and other Ecuadoran employees were not paid by check or provided proper documentation regarding their employment on account of their race, national origin, and alienage.

The discrimination in compensation, terms of employment, and conditions of employment was committed by Rocco's Bakery from the initiation of their employment through the termination of their employment on or about May 29, 2008.

84. Plaintiffs were subject to both acts of intentional discrimination and acts that caused a disparate impact.

## COUNT FOUR

### UNLAWFUL RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT

85. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62. Plaintiffs were unlawfully terminated by Rocco's Bakery under 42 U.S.C. § 2000e-3(a)  because they opposed its discriminatory practices and was believed to have been participating in a government investigation of the business' unlawful practices.

## COUNT FIVE

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

86. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

87. Defendants' failure and/or refusal to pay Plaintiffs overtime at a rate equal to or greater than one-half times their regular hourly rate for hours worked in excess of forty ours in a week violated the Fair Labor Standards Act, 29 U.S.C. § 207.

88. As a result of the Defendants' unlawful wage payment practices, Plaintiffs suffered a loss of wages owed.

89. The failure and/or refusal of Defendants Antonio DiBenedetto and Anna DiBenedetto to pay Plaintiffs overtime requirements of the Fair Labor Standards Act constituted a willful disregard for Plaintiffs' rights.

## COUNT SIX

## VIOLATION OF 42 U.S.C. § 1981

90. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

91. Defendants intentionally targeted Plaintiffs for physical and verbal abuse on the job and subjected them to less favorable working conditions on account of their gender, race, national origin, and/or alienage.

92. Defendants continuously and repeatedly used racist and sexually abusive language, unwanted sexual touching, and efforts to coerce sexual activity toward Plaintiffs and other Hispanic Ecuadoran women employees of Rocco's Bakery.

93. The workplace at Rocco's Bakery was so infested with discriminatory intimidation, ridicule, and insult of sufficient severity that it altered the working conditions for Plaintiffs.

## COUNT SEVEN

**UNLAWFUL DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION CONN. GEN. STAT. § 46a-60(a)(1).**

94. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

95. Plaintiffs were subject to discrimination by Rocco's Bakery in compensation, terms of employment, and conditions of employment on account of her gender, race, national origin, and alienage in violation of Conn. Gen. Stat. § 46a-60(a)(1).

96. Plaintiffs and other Ecuadoran women employed at Rocco's Bakery were subject to unwanted and inappropriate sexual touchings, sexual comments racial comments, and exposure to sexual acts by her employer on account of their gender, race, national origin, and alienage.

97. Plaintiffs and other Ecuadoran employees were not paid required overtime wages on account of their race, national origin, and alienage.

98. Plaintiffs and other Ecuadoran employees were segregated into particular areas of the bakery away from customers and made to perform more strenuous work on account of their race, national origin, and alienage.

99. Plaintiffs and other Ecuadoran employees were not paid by check or provided proper documentation regarding their employment on account of their race, national origin, and alienage.

100. The discrimination in compensation, terms of employment, and conditions of employment was committed by Rocco's Bakery from the initiation of their employment through the termination of their employment on or about May 29, 2008.

101.     Plaintiffs were subject to both acts of intentional discrimination and acts

that caused a disparate impact.

## COUNT EIGHT

**UNLAWFUL DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION  CONN.
GEN. STAT. § 46a-60(a)(1).**

102.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

103.     Plaintiffs were subject to discrimination by Rocco's Bakery in

compensation, terms of employment, and conditions of employment on account

of her gender, race, national origin, and alienage in violation of Conn. Stat. §

46a-60(a)(1).

104.     Plaintiffs and other Ecuadoran women employed at Rocco's Bakery were

subject to unwanted and inappropriate sexual touchings, sexual comments racial

comments, and exposure to sexual acts by her employer on account of their

gender, race, national origin, and alienage.

105.     Plaintiffs and other Ecuadoran female employees were not paid required

overtime wages on account of their race, national origin, and alienage.

106.     Plaintiffs and other Ecuadoran female employees were segregated into

particular areas of the bakery away from customers and made to perform more

strenuous work on account of their race, national origin, and alienage.

107.     Plaintiffs and other Ecuadoran female employees were not paid by check

or provided proper documentation regarding their employment on account of

their race, national origin, and alienage.

108.     The discrimination in compensation, terms of employment, and

conditions of employment was committed by Rocco's Bakery from the initiation

of their employment through the termination of their employment on or about

May 29, 2008.

109.      Plaintiffs were subject to both acts of intentional discrimination and acts

that caused a disparate impact.

## COUNT NINE

### UNLAWFUL DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN IN VIOLATION  CONN. GEN. STAT. § 46a-60(a)(1).

110.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

111.      Plaintiffs were subject to discrimination by Rocco's Bakery in

compensation, terms of employment, and conditions of employment on account

of her gender, race, national origin, and alienage in violation of Conn. Stat. §

46a-60(a)(1).

112.      Plaintiffs and other Ecuadoran women employed at Rocco's Bakery were

subject to unwanted and inappropriate sexual touchings, sexual comments racial

comments, and exposure to sexual acts by her employer on account of their

gender, race, national origin, and alienage.

113.      Plaintiffs and other Ecuadoran employees were not paid required

overtime wages on account of their race, national origin, and alienage.

114.      Plaintiffs and other Ecuadoran employees were segregated into particular

areas of the bakery away from customers and made to perform more strenuous

work on account of their race, national origin, and alienage.

115.      Plaintiffs and other Ecuadoran employees were not paid by check or

provided proper documentation regarding their employment on account of their race, national origin, and alienage.

The discrimination in compensation, terms of employment, and conditions of employment was committed by Rocco's Bakery from the initiation of their employment through the termination of their employment on or about May 29, 2008.

116.     Plaintiffs were subject to both acts of intentional discrimination and acts that caused a disparate impact.

## COUNT TEN

### UNLAWFUL DISCRIMINATION ON THE BASIS OF ALIENAGE IN VIOLATION CONN. GEN. STAT. § 46a-60(a)(1).

117.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

118.     Plaintiffs were subject to discrimination by Rocco's Bakery in compensation, terms of employment, and conditions of employment on account of her gender, race, national origin, and alienage in violation of Conn. Stat. § 46a-60(a)(1).

119.     Plaintiffs and other Ecuadoran women employed at Rocco's Bakery were subject to unwanted and inappropriate sexual touchings, sexual comments racial comments, and exposure to sexual acts by her employer on account of their gender, race, national origin, and alienage.

120.     Plaintiffs and other Ecuadoran employees were not paid required overtime wages on account of their race, national origin, and alienage.

121.     Plaintiffs and other Ecuadoran employees were segregated into particular

areas of the bakery away from customers and made to perform more strenuous work on account of their race, national origin, and alienage.

122.     Plaintiffs and other Ecuadoran employees were not paid by check or provided proper documentation regarding their employment on account of their race, national origin, and alienage.

123.     The discrimination in compensation, terms of employment, and conditions of employment was committed by Rocco's Bakery from the initiation of their employment through the termination of their employment on or about May 29, 2008.

124.     Plaintiffs were subject to both acts of intentional discrimination and acts that caused a disparate impact.

## COUNT ELEVEN

### UNLAWFUL RETALIATION UNDER CONN. GEN. STAT. § 46a-60(a)(4)

125.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

126.     Plaintiffs were unlawfully terminated by Rocco's Bakery under Conn. Gen. Stat. § 46a-60(a)(4) because they opposed its discriminatory practices and was believed to have been participating in a government investigation of the business' unlawful practices.

## COUNT TWELVE

### UNLAWFUL SEXUAL HARASSMENT UNDER CONN. GEN. STAT. § 46a-60(a)(8).

127.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

128.     Plaintiffs were subject to unwanted sexual advances, requests for sexual

favors, and conduct of a sexual nature that was name an explicit and implicit term or condition of employment in violation of Conn. Gen. Stat. § 46a-60(a)(8) (A).

129.     Plaintiffs were subjected to unwanted sexual advances, requests for sexual favors, and conduct of a sexual nature that created an intimidating, hostile and offensive working environment by Rocco's Bakery in violation of Conn. Gen. Stat. § 46a-60(a)(8)(C).

130.     The acts that created the intimidating, hostile, and offensive working environment include unwanted sexual touchings of Plaintiffs, unwanted sexual touchings of other female employees in front of Plaintiffs, inappropriate sexual comments made about Plaintiffs and other female Ecuadoran employees to both the Plaintiffs and other employees, solicitation for sexual activity, and being forced to witness exposure of sexual organs and handling of sexual organs for self-gratification.

131.     These acts were committed by Rocco's Bakery from the initiation of the employment in 2000 through the termination of her employment on or about May 29, 2008.

132.     These acts collectively constituted an unlawful employment practice.

## COUNT THIRTEEN

### UNLAWFUL DEPRIVATION OF RIGHTS PROTECTED BY LAWS OF THE UNITED STATES UNDER CONN. GEN. STAT. § 46a-58(a).

133.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

134.     Plaintiffs' rights, privileges, and immunities protected by the laws of the

United States were violated by Rocco's Bakery in contravention of Conn. Gen. Stat. § 46a-58(a). Specifically, Plaintiffs's rights, privileges, and immunities protected by Title VII of the Civil Rights Act of 1964 were violated by Rocco's Bakery as described in counts 1, 2, 3, 4, 5, and 6.

## COUNT FOURTEEN

### UNLAWFUL AIDING AND ABETTING OF AN UNLAWFUL EMPLOYMENT PRACTICE UNDER CONN. GEN. STAT. § 46a-60(a)(5).

135.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

136.    All of the named defendants in this complaint — namely Antonio DiBenedetto, Anna DiBenedetto, Ferdinando DiBenedetto, and Giovanni DiBenedetti — aided and abetted the unlawful discriminatory acts that occurred at Rocco's Bakery against the Plaintiffs and their family members.

## COUNT FIFTEEN

### CONNECTICUT WAGE PAYMENT LAWS.

137.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

138.    Plaintiffs bring this claim pursuant to Conn. Gen. Stat. § 31-72, alleging that the wage payment practices of Defendants Antonio DiBenedetto and Anna DiBenedetto toward Plaintiffs violated Connecticut's wage payment laws, Conn. Gen. Stat. §§ 31-71(a) through 31-71(i), and Connecticut's overtime wage statute, Conn. Gen. Stat. § 31-76b.

139.    As a result of the above named Defendants' unlawful wage payment practices, the Plaintiffs suffered a loss of wages owed.

**COUNT SIXTEEN**

**UNJUST ENRICHMENT**

140.        Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

141.        Defendants deceit, abuse, and coercion perpetrated upon Plaintiffs

enabled them to obtain a benefit from Plaintiffs, namely the operation and profit

from the operation of Rocco's Bakery with artificially low labor costs.

142.        Defendants have not provided this benefit to Plaintiffs

143.        As a result of Defendants' conduct, Plaintiffs have suffered a detriment,

namely a loss of the value of their labor.

**COUNT SEVENTEEN**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

144.        Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

145.        Defendants Antonio DiBenedetto, Giovanni DiBenedetto, and Fernando

DiBenedetto intended or knew or should have known that their conduct toward

Plaintiffs was likely to cause Plaintiffs to suffer severe emotional distress.

146.        The conduct of above named Defendants was extreme and outrageous.

147.        The conduct of above named Defendants caused the Plaintiffs to suffer

severe emotional distress that included things such as fear, shame, humiliation,

embarrassment, disappointment, depression, anxiety, worry, helplessness, and

powerlessness.

148.        The conduct of the above named Defendants was outrageous, wanton,

and malicious, imbued with an evil motive and violence, and was performed with

23

a reckless indifference to the interests of Plaintiffs.

## COUNT EIGHTEEN

### ASSAULT

149.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 62.

150.      By their actions, Defendants Antonio DiBenedetto, Ferdinando

DiBenedetto, and Giovanni DiBenedetto assaulted the the Plaintiffs by both

physically touching them without consent and by placing them in a position of

imminent apprehension of harmful or offensive contact as a result of which

Plaintiffs' feared for their safety.

151.      As a result of assaults by above named defendants suffered severe

apprehension of harmful conduct and feared for their safety.

152.      As a further sole and proximate result of assaults by above named

Defendants, Plaintiffs suffered damages.

## DEMAND FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY THAT THE COURT AWARD THEM:

1.  Unpaid overtime wages pursuant to the Fair Labor Standards Act and
    Connecticut wage payment laws;

2.  An amount equal to the Plaintiffs' unpaid overtime wages pursuant to the
    liquidated or double damages provisions of the federal Fair Labor Standards
    Act and Connecticut wage payment laws;

3.  Compensatory damages, including for Plaintiffs' pain, suffering, and
    emotional distress;

4.  Any benefit unjustly obtained by Defendants from Plaintiffs;

5.  Punitive damages;

6.  Pre-judgment and post-judgment interest;

7.  Reasonable attorney's fees and costs; and

8.  Such other and further relief as this Court deems proper under the circumstances.

## **<u>REQUEST FOR TRIAL BY JURY</u>**

The Plaintiffs respectfully request a trial by jury as to all claims to which they are certified

Dated on May 19, 2010:

> Respectfully submitted for Irma Yeoconda
> Obando and Veronica Obando, by
>
> /s/
> Justin Conlon, their attorney
> federal bar ct26187; juris 421914
> Law Offices of Justin Conlon
> 605 Washington Avenue
> P.O Box 304
> North Haven, CT 06473
> Phone (203) 745-4972
> Fax (203) 745-4803
> jconlon@jconlonlaw.com